## RALLS v STATE

Ohio Appeals, 3rd Dist, Crawford Co

No. 1291.   Decided August 11, 1931

L. H. Kreiter, Galion, for plaintiff.
J. D. Sears, Bucyrus, for Defendant.

**KLINGER, J.**

We will consider these questions in the order in which they are presented. First, did the trial court err in refusing to grant a change of venue?

Much evidence and many affidavits were submitted on both sides of this question. The trial court, upon a full consideration of all the evidence, affidavits and testimony, decided that a fair trial could and would be given to the defendant in Crawford County, Ohio.

As a reviewing court we are not able to say that the trial court erred or that he was guilty of an abuse of discretion in so holding.

The next error complained of was the refusal of the trial court, in the impanelling of the jury, to sustain challenges for cause as to five jurors whose names are set forth in the briefs and bill of ·exceptions. The trial court, after making inquiry, asked each of these proposed jurors the question that if they were selected to sit as triers of the facts in the case, they could listen to the evidence as given by the witnesses and follow the law as the court would give it, in weighing and considering the testimony, without being prejudiced by what had been said or read concerning the tragedy or the defendant on trial. These jurors, as well as all the others, answered the court that they would decide the case according to the evidence offered at the trial and apply it according to the rules of law as given by the court, regardless of anything that they might have read or heard concerning the case. If the trial court, hearing and seeing these jurors, believed them,—and he evidently did,—we as a reviewing court do not feel justified in challenging the correctness of the trial court's conclusions. In regard to this assignment of error, it is sufficient to say that the opinions of the jurors were not formed from reading or hearing the testimony of witnesses, or conversations with them, but merely from newspaper reports and public rumor. They all testified on their voir dire that they would, if selected, render an impartial verdict, and the trial court evidently, by accepting them, was of the same opinion, and as a reviewing court we could not say that this was an abuse of discretion on the part of

trial court. See **McHue v State, 42 Oh St, 154**; and, **Doll v State, 45 Oh St 445.**

The next objection ·challenges the sufficiency of the evidence and claims error by the trial court in the admission of evidence as to the official capacity of George Davenport. This questions also, the sufficiency of the indictment and denies that the indictment charges the crime of murder in the first degree.

We find the Supreme Court of Ohio has, on at least one occasion, emphatically expressed its interpretation of §12402-1, GC.

Counsel for plaintiff in error maintains that murder in the first degree is not charged by this indictment ·and therefore the opening statement of the prosecutor to the jury was prejudicial. The objection on the part of Walter Ralls to the indictment, does not charge a defect in the indictment, but claims that it does not charge the crime of murder in the first degree, but the crime of shooting with intent to kill or with assault with intent to kill.

This indictment, as has been stated before, is drawn under §12402-1, GC, which provides that "Whoever purposely and willfully kills.a sheriff, policeman * * * in the discharge of his duties, is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused person recommend mercy. * * *"

The validity of this section, together with the sufficiency of an ·indictment drawn thereunder, came before the Supreme Court in the case of **Holt v State, 107 Oh St, 307**; **Atkins v State, 115 Oh St, 542**; and, **Freeman v State, 119 Oh St, 250**, and according to these holdings, this court is of the opinion that the indictment correctly and sufficiently charges the crime of murder in the first degree under this section of the statute.

An indictment sufficiently charges the crime of murder in the first degree under §12402-1, GC, in the following words:

"The jurors of the grand jury of said county, on their oaths, in the· name and by the authority of the State of Ohio, do find and present that Walter Ralls, Blanton Ralls and Elijah Ralls late of said county, on the 23rd day of January in the year of our Lord one thousand nine hundred and thirty one at the county of Crawford aforesaid, with force and· arms at the county of Crawford, and State of Ohio, aforesaid, in and upon one George Davenport, a sheriff of Crawford county, Ohio, then and there being, and whilst the said George Davenport, as a sheriff aforesaid, was engaged in the discharge of his duties as·a sheriff as

aforesaid, did make an assault in a menacing manner, with a certain shot gun then and there loaded and charged with gunpowder and leaden shot, which said shot gun, they, the said Walter Ralls, Blanton Ralls and Elijah Ralls, then and there had in their joint possession and control, and then and there unlawfully, purposely and wilfully did discharge and shoot off to, against and upon the said George Davenport, a sheriff as aforesaid, whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid, with the intent the said George Davenport, a sheriff as aforesaid, and whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid, unlawfully and purposely to kill and murder; and that the said Walter Ralls, Blanton Ralls and Elijah Ralls, with the leaden shot aforesaid so as aforesaid by them, the said Walter Ralls, Blanton Ralls and Eiljah Ralls, by force of the gunpowder aforesaid, then and there discharged and shot out of the shot gun aforesaid, then and there unlawfully, purposely and wilfully did him, the said George Davenport, a sheriff as aforesaid, and whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid, strike, penetrate and wound, with the intent him, the said George Davenport, a sheriff as aforesaid, and whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid, unlawfully, purposely and wilfully to kill and murder, then and there giving to him, the said George Davenport, a sheriff as aforesaid, and whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid in the abdomen of the body of him, the said George Davenport, a sheriff as aforesaid, and whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid a mortal wound of which said mortal wound the said George Davenport, a sheriff as aforesaid, and whilst the said George Davenport was engaged in the discharge of his duties as a sheriff as aforesaid, then and there died. Contrary to the statute is such case made and provided, and against the peace and dignity of the State of Ohio."

Another ground of error complained of was the admission of the statement of a co-defendant, Blanton Ralls, into the record, on the ground that the statement was not made in the presence of the defendant Walter Ralls.

The objection to the admission of this testimony, was general. In the trial of this case, the contention of the state was that there was a conspiracy between Blanton Ralls, Walter Ralls and Elijah Ralls to resist the officers, and that the killing was the result of carrying out this conspiracy.

Evidence of a conspiracy or tending to show a conspiracy would be competent. Admissions and declarations made by co-conspirators in the absence of the others, would be competent for the purpose of showing conspiracy, and for the purpose of showing the conspiracy between Blanton Ralls and Elijah Ralls and Walter Ralls, this evidence was competent, and had counsel asked the trial court to limit it, undoubtedly the trial court would have instructed the jury accordingly. But it is competent for some purposes, and hence a general objection was not well taken.

When two or more persons conspire to resist a sheriff in the legal discharge of his official duties, and arm themselves with firearms for the purpose of resisting the officer, and one of the conspirators thereupon shoots and kills the sheriff while in the discharge of his official duties, all the conspirators are equally guilty, under §12402-1 GC, of murder in the first degree.

The next ground of error complained of, was, did the trial court err in not granting a new trial because of newly discovered evidence? There is nothing in the record that we are able to find, that warrants this claim or contention. The admission and confession of Walter Ralls was offered in evidence, in which he testified:

"My name is Walter Ralls, I live in Crestline, Ohio, and I am thirty one years old. On Thursday, January 22nd Blanton Ralls my nephew and I planned to steal some chickens from Fred Vogel farm. Thursday night around midnight I went to my brother Elijah Ralls house where Blanton lived and we both went to the Vogel place, carrying a chicken crate with us. The chicken coop door was closed and locked. We pulled the hasp which held the lock and the door, pulled open the door, and I went in and took the chickens off the roost and handed them to Blanton who put them in the crate. We then took the crate of chickens to a place of hiding near the McCumbers chicken house. We then each went to our homes and next morning I went and got the chickens and sold them to McCumber. He gave me a check which I cashed at a Kroger store buying some groceries. I then went home. On my way home Blanton overtook me and asked for his half of the chicken

money, which I gave him. A little later that day Elihu Johnson, marshal of Crestline, came to my house. I believed him to be after me for the burglary of the chickens and I ran out the door. I later learned that officers of the law were trying to arrest me for stealing the chickens and I hid all day. Right after dark on Friday, January 23rd, Elijah Ralls took Blanton and myself in his car to his home. I told Elijah and Blanton that I had run enough and that I was going to defend myself from the officers. Blanton took an automatic shot gun which had been in Elijah's downstairs bedroom upstairs where we were to sleep. Elijah gave me some cartridges for a 25-calibre rifle, with which we armed ourselves, and asked me if that was enough ammunition. All three of us planned that if the law (officers of the law) came, we would fight them off. Elijah had a 38-calibre revolver which he said he would use. Blanton and I went upstairs to bed. After while Elijah came up and told us that the officers were at the door. Blanton and I both got out of bed. Blanton took one gun in his hands and I took the other. I stood near the foot of the bed near a corner of the bedroom. Blanton crouched behind the bed. I saw a light coming up the steps. I knew it was an officer. I will not say that I fired my gun, or that I did not fire it. I make this statement of my own free will, because I want to tell the truth. I was under no fear at the time I gave my oral statement to the prosecutor or am I under any fear as I sign this statement. No threats of any kind have been made against me, nor has any promise of immunity or reward been given me. I have read this statement and I have had it read to me before I signed it and I understand everything contained in it."

This statement is not contradicted by the testimony of Walter Ralls at the trial, but is supported in most particulars. This statement, together with his testimony at the trial, showed that Walter Ralls had committed the crime of burglary; that the sheriff and his aides and the local police officers at Crestline were trying to apprehend Walter Ralls for this crime of burglary and were pursuing Walter Ralls; that Walter Ralls met his brother Elijah Ralls and his nephew Blanton Ralls and they decided they would fight the officers of the law, and armed themselves with a revolver, a rifle and a shot gun for the express purpose of

resisting arrest and fighting off the officers of the law, and in pursuance of this agreement and in carrying out this plan, the sheriff was shot, from the effects of which shot he died. This admission, both in his statement and his evidence offered at the trial, brings this case within the section of the statute under which the indictment is drafted. It in fact admits the guilt of all the parties participating in the conspiracy. If all the other evidence were disregarded, the jury would be warranted and justified in arriving at the verdict and conclusion it did, upon this statement and testimony of Walter Ralls, supported as it was by the admission of Blanton Ralls as to the conspiracy.

One point most strenuously argued by counsel for plaintiff in error, is set up in their brief as the third reason why a new trial should be granted. The claim is made that deputy Sheriff Stuckert, in a statement to counsel for plaintiff in error, Louis H. Kreiter, on March 5, 1931, a short time after the verdict was rendered, said that he knew what the verdict was, for one of the jurors had told him he would sit for a week or two weeks on the jury before he would give in to any verdict except "murder in the first degree without mercy."

We agree with what counsel for plaintiff in error say in their brief if we accept the statement as correct, and we have no doubt but what counsel believe in all seriousness and good faith that such a statement was in fact made. However, issue was joined and this juror was called, the deputy sheriff was called and other witnesses that were present and might have heard the conversation, and they all denied that the juror Brause made such a statement. And again we defer to the trial court who was present and heard the testimony and saw the witnesses, and we do not feel justified in reversing his findings, in the light of the entire case as disclosed by the evidence, and especially in the light of the admissions and confessions that were made by the defendant as well as by one of the co-conspirators.

A number of other errors are assigned in the brief of counsel. We have investigated them and fail to find any error that would warrant or justify a reversal.

The verdict, finding and judgment of the Court of Common Pleas will be affirmed. Exceptions saved.

JUSTICE, PJ, and LLOYD, J, the latter of the Sixth Appellate District, concur.